# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **20-01758-hb**

## ORDER OVERRULING OBJECTION TO CONFIRMATION

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/20/2021**



Entered: 05/20/2021

Chief US Bankruptcy Judge
District of South Carolina

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Marlena Joy Pizzo,<br><br>Debtor(s). | C/A No. 20-01758-HB<br><br>Chapter 13<br><br>**ORDER OVERRULING OBJECTION<br>TO CONFIRMATION** |

**THIS MATTER** is before the Court to consider confirmation of the plan filed by Debtor Marlena Joy Pizzo.[1] Objections were filed by Creditor Renee S. Siegan[2] and Gretchen D. Holland, Chapter 13 Trustee,[3] to which Pizzo filed Responses.[4] A hearing was held on May 6, 2021. Pizzo, her counsel, F. Lee O'Steen, and the Trustee attended in-person and, by agreement of the parties, Siegan participated by telephone. Pizzo testified, supplementing her testimony from a prior confirmation hearing.[5]

The Trustee's Objection was resolved at the hearing requiring Pizzo to pay more to the Trustee for distribution to creditors.[6] Siegan's Objection remains and asserts Pizzo should not be allowed to make voluntary contributions to her retirement plan during the pendency of this case.[7] At the conclusion of the hearing, the Court granted Siegan leave to file a memorandum in support of her Objection.[8] After consideration of the evidence and testimony, the parties' arguments and

---

[1] ECF No. 57, filed Mar. 22, 2021.
[2] ECF No. 60, filed Apr. 2, 2021.
[3] ECF No. 63, filed Apr. 29, 2021.
[4] ECF Nos. 62 & 64.
[5] *See* ECF No. 54, entered Mar. 8, 2021 (order denying confirmation after the February 11, 2021 confirmation hearing).
[6] ECF No. 66, filed May 7, 2021 (Payment Increase Stipulation).
[7] Siegan also argued Pizzo was continuing to make payments to her student loan creditor and her plan payments should be increased by that amount. However, the proposed plan does not provide any separate treatment for Pizzo's student loan debt, and Pizzo testified she will not be making payments to the student loan creditor outside the plan during the pendency of this case.
[8] ECF No. 67, filed May 14, 2021.

pleadings, and applicable law, the Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1),[9] overruling Siegan's Objection.

### FINDINGS OF FACT

The facts surrounding Siegan's loan to Pizzo, the parties' relationship, and Pizzo's financial circumstances are provided in detail in the Court's Order Denying Confirmation and are adopted herein.[10] Pizzo's Chapter 13 plan proposes monthly payments of $900.00 for 7 months, $850.00 for 4 months, and $1,350.00 for 49 months. However, pursuant to the settlement with the Trustee, Pizzo has agreed to make monthly payments of $900.00 for 7 months, $850.00 for 4 months, $1,645.00 for 19 months, and $1,915.00 for 30 months, resulting in total plan payments to the Trustee of $98,405.00, an increase of $22,555.00. Siegan is an unsecured creditor who, under the proposed plan, will receive a distribution of less than 100% of her $44,000.00 claim. Including Siegan's claim, the filed general unsecured claims total amount is approximately $109,000.00.[11] The only secured claim paid through the plan is to Capital One Auto Finance for its $23,969.27 claim secured by Pizzo's vehicle, which will be paid in the monthly amount of $457.00 or more toward.

Pizzo is 36 years-old whose annual income is above the median family income in South Carolina for her household size. She makes monthly voluntary contributions to her retirement plan of $471.53, which is the amount needed to receive the maximum matching contribution from her employer. The current balance of her retirement account is $38,000.00, and she has been making these contributions since her employment began more than three years ago. Siegan's remaining, relevant objection asserts Pizzo's plan was not filed in good faith because Pizzo is not dedicating

---

[9] Made applicable to this contested matter pursuant to Fed. R. Bankr. P. 7052 and 9014.
[10] ECF No. 54. That Order addressed a significantly different plan.
[11] This amount does not include Pizzo's student loan debt, which was scheduled at $229,516.00. That creditor did not file a claim.

2

all of her disposable income toward the plan payments and should not be allowed to continue her voluntary retirement contributions to the detriment of her creditors. Siegan requests Pizzo's plan payments increase prospectively from this point to include the $471.53 monthly retirement contribution, resulting in an increase of approximately $23,000.00 in total plan payments to the Trustee.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) and this Court may enter a final order.

The filing of a bankruptcy petition creates a bankruptcy estate comprised of the debtor's legal and equitable interests in property unless excluded by statute. 11 U.S.C. § 541(a). Under Chapter 13, the bankruptcy estate also includes the debtor's property and earnings acquired "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1) & (2). Section 1325(b) requires that, if the trustee or the holder of an allowed unsecured claim objects, the debtor must either pay all allowed claims in full or the plan must provide that "all of the debtor's projected disposable income" be devoted to the Chapter 13 plan. 11 U.S.C. § 1325(b)(1)(B). For above-median debtors, disposable income is measured by the means test contained in §§ 1325(b)(2) and (3), and 707(b). Section 707(b) refers to the debtor's "current monthly income," which is defined by the Code as "the average monthly income from all sources that the debtor receives" during the six months preceding the filing, with certain exclusions and adjustments not relevant here. 11 U.S.C. § 101(10A).

Neither § 1325 nor § 707 explicitly authorizes retirement contributions as an allowable expense in calculating disposable income. *In re Whitt*, 616 B.R. 323, 326 (Bankr. S.D. Miss. 2020)

3

(citing *Miner v. Johns (In re Miner)*, 589 B.R. 51, 56 (W.D. La. 2018)). Rather, § 541(b)(7) of the Code set forth the following exceptions to property of the estate:

> **(7)** any amount –
>> **(A)** withheld by an employer from the wages of employees for payment as contributions –
>>> **(i)** to –
>>>> **(I)** an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>>>>
>>>> **(II)** a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>>>>
>>>> **(III)** a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>>>
>>> *except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)*; or
>>>
>>> **(ii)** to a health insurance plan regulated by State law whether or not subject to such title; or
>>
>> **(B)** received by an employer from employees for payment as contributions
>>> **(i)** to –
>>>> **(I)** an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>>>>
>>>> **(II)** a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>>>>
>>>> **(III)** a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>>>
>>> *except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2)*; or
>>>
>>> **(ii)** to a health insurance plan regulated by State law whether or not subject to such title[.]

11 U.S.C. § 541(b)(7) (emphasis added).

The "except that" portions of § 541(b)(7) are known as the "hanging paragraph" and have been the subject of extensive debate, resulting in three main competing views described in detail

4

by the Fourth Circuit in *Gorman v. Cantu (In re Cantu)*, 713 F. App'x 200, 202 (4th Cir. 2017). The majority approach, which has been adopted by at least one court within the Fourth Circuit, finds that § 541(b)(7) allows Chapter 13 debtors to deduct post-petition voluntary retirement contributions from disposable income, subject to a showing of good faith. *See In re Cantu*, 553 B.R. 565, 575 (Bankr. E.D. Va. 2016) (adopting *Baxter v. Johnson (In re Johnson)*, 346 B.R. 256 (Bankr. S.D. Ga. 2006) "for the simple reason that Section 541(b)(7) does not limit the debtor's ability to make contributions post-petition, nor is there any distinction between pre-petition contributions and post-petition contributions in the statute. There is nothing in the text of Section 541(b)(7) from which the Court can conclude that Congress intended any such distinctions. Indeed, the use of the term '*any amount*,' without limitation, followed by the term 'contributions' compels the conclusion that Congress meant no such distinction." (citing 11 U.S.C. § 541(b)(7)).

Siegan asks the Court to adopt the dissenting opinion of Circuit Judge Readler in *Davis v. Helbling (In re Davis)*, 960 F.3d 346 (6th Cir. 2020), which urged for the minority approach that precludes debtors from excluding any voluntary post-petition retirement contributions, even if the debtor was making contributions pre-petition. *Id.* at 358. The Court declines to do so and instead joins the majority and other courts within the Fourth Circuit that have held post-petition voluntary retirement contributions are not considered disposable income, so long as such contributions are made in good faith. *See Cantu*, 553 B.R. at 575; *see also In re Whitt*, 616 B.R. 323, 330 (Bankr. S.D. Miss. 2020) (adopting majority position that post-petition retirement contributions are not considered disposable income, reasoning that the unambiguous language of § 541(b)(7) "excludes funds already contained within a retirement account at the time of the filing the petition from the bankruptcy estate" and the language of the "hanging paragraph" added under BAPCPA demonstrates Congress' intent to exclude retirement contributions from available disposable

5

income under § 1325(b) (citations omitted)).  Therefore, Pizzo's monthly retirement contributions are excluded from her disposable income under §§ 541(b)(7) and 1325(b) subject to the Court finding Pizzo meets the good faith requirement for confirmation.

Good faith is an independent requirement for confirmation of a Chapter 13 plan. 11 U.S.C. § 1325(a)(3).  In determining whether a plan has been proposed in good faith, courts in the Fourth Circuit examine the totality of the circumstances. *Deans v. O'Donnell (In re Deans),* 692 F.2d 968, 972 (4th Cir. 1982).  The "'court's discretion in making the good faith determination is necessarily a broad one' and should be based on an examination of the totality of the circumstances on a case by case basis." *In re Martellini*, 482 B.R. 537, 542 (Bankr. D.S.C. 2012) (quoting *Deans,* 692 F.2d at 972).  "As part of the good faith analysis, the Court may consider factors such as the debtor's age in relation to his anticipated retirement to determine whether it would be unreasonable to reduce his or her retirement contributions during the length of the plan." *RESFL FIVE, LLC v. Ulysse*, C/A No. 16-CV-62900, 2017 WL 4348897, at *8 (S.D. Fla. Sept. 29, 2017).

There is a shifting burden of proof for an objection to confirmation under § 1325(b).  The initial burden falls on the objecting party to articulate a *prima facie* objection.  Objecting parties are "initially required to produce satisfactory evidence that Debtor is not devoting his 'projected disposable income' to his Plan." *Martellini*, 482 B.R. at 541 (quoting *In re Barnes*, 378 B.R. 774, 777 (Bankr. D.S.C. 2007)).  Once this burden is met, however, the ultimate burden is on the debtor to prove by a preponderance of the evidence that the plan complies with the confirmation requirements, including the good faith requirement. *Id.* at 541-42 (quoting *In re Bridges*, 326 B.R. 345, 349 (Bankr. D.S.C. 2005)).

Although Siegan prevailed in her good faith arguments at the initial confirmation hearing, the plan under consideration here is significantly different and provides far more for Pizzo's

6

creditors.[12] However, Siegan argues it is inequitable to allow Pizzo to continue to contribute to her retirement account instead of repaying the loan Siegan provided with own retirement funds to Pizzo. Pizzo's contributions are permissible and, therefore, bad faith cannot be inferred solely from that conduct. *Whitt*, 616 B.R. at 331-32 (citations omitted); *In re Garza*, 575 B.R. 736, 751 (Bankr. S.D. Tex. 2017) ("In essence, Trustee is arguing that the Plan attempts to abuse the spirit of the Code by failing to commit all of Debtors' projected disposable income to the Plan. However, Trustee's argument crumbles under the weight of the plain language of the Code, which denotes voluntary 401(k) contributions are allowed pursuant to § 541(b)(7)." (citations omitted)). Additionally, Pizzo has voluntarily contributed to her retirement account for several years and in amounts consistent with what she intends post-petition. While she is only 36 years-old, the record demonstrates a history of pre-petition retirement planning and her monthly contribution is well within the allowable limit.[13] Further, it appears that a substantial portion – albeit not the entire amount – of the unsecured debts will be paid through the plan. From the totality of the evidence and considering the burden of proof, the Court concludes Pizzo's current plan is proposed in good faith.

**IT IS, THEREFORE, ORDERED** that Siegan's Objection to confirmation of Pizzo's plan is overruled. Upon recommendation from the Chapter 13 Trustee, the Court shall enter an order confirming the Chapter 13 plan filed on March 22, 2021.

---

[12] Pizzo's prior plan, which was denied confirmation, proposed payments of $900.00 for 7 months and $850.00 for 53 months, resulting in total plan payments of $51,350.00. The current plan proposes total payments of $98,405.00 and does not provide separate treatment for her student loan debt.

[13] *See Retirement Topics – 403(b) Contribution Limits*, IRS (Mar. 3, 2021), https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-403b-contribution-limits#:~:text=The%20limit%20on%20elective%20salary,%2419%2C500%20in%202020%20and%202021 (setting the annual limit on voluntary retirement contributions at $19,500.00).